UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In Re:<br>ERIC MWANGI and PAULINE MWICHARO,<br><br>        Debtors.<br>_____<br>ERIC MWANGI and PAULINE MWICHARO,<br><br>        Plaintiffs,<br>v.<br>WELLS FARGO BANK, N.A.,<br><br>        Defendant. | 2:11-CV-01753-PMP-GWF<br><br>BK-S-09-24057-BAM<br>Adv. No. 11-1022<br><br>OPINION |

Presently before the Court is Appellants Eric Mwangi and Pauline Mwicharo's appeal of the bankruptcy court's order dismissing with prejudice their adversary proceeding against Appellant Wells Fargo Bank, N.A.

**I. BACKGROUND**

The following factual background is derived largely from the statement of facts as recited by the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") in In re Mwangi, 432 B.R. 812 (9th Cir. BAP 2010). On August 3, 2009, Appellants Eric Mwangi and Pauline Mwicharo filed a voluntary chapter 7 petition. At that time, Appellants held four accounts at Appellee Wells Fargo Bank, N.A. ("Wells Fargo") with an aggregate balance of $17,075.06. Appellants' original Schedule B did not list two of the four accounts, and Appellants' original Schedule C did not claim an exemption for any of

the funds on deposit in the accounts.  Appellants listed Wells Fargo as an unsecured creditor for two debts totaling $52,000.

When Wells Fargo learned of Appellants' bankruptcy filing, Wells Fargo placed a "temporary administrative pledge" on all four of Appellants' accounts.  Wells Fargo placed the hold on the accounts pursuant to an internal standard procedure.  Wells Fargo expressly disclaimed that it placed the hold on the accounts to protect any setoff rights it may have as an unsecured creditor.

After placing the hold on Appellants' accounts, Wells Fargo sent a letter dated August 6, 2009, to the chapter 7 trustee requesting instructions as to whom Wells Fargo should distribute the account funds.  In the letter to the trustee, Wells Fargo stated that upon the filing of the bankruptcy petition, the account funds became property of the estate and thus were payable only to the trustee or upon the trustee's order.  Wells Fargo informed the trustee that Wells Fargo would maintain a hold on the funds until it received direction from the trustee regarding the funds' disposition or until October 12, 2009, which was thirty-one days after the scheduled first meeting of creditors.

That same date, Wells Fargo sent letters to Appellants' counsel advising that the accounts no longer were available to Appellants because the funds were property of the estate and that Wells Fargo had an obligation to preserve estate property and to follow the trustee's directions with respect to estate property.  The letters stated Wells Fargo had requested instruction from the trustee and suggested Appellants potentially could expedite matters by contacting the trustee.

On August 11, 2009, Appellants filed an amended Schedule B in which they included all four accounts at Wells Fargo.  Appellants also filed an amended Schedule C in which they claimed an exemption in seventy-five percent of the value of each of the Wells Fargo accounts, relying on Nevada Revised Statutes § 21.090(1)(g), which provides an exemption for seventy-five percent of the debtor's disposable earnings.  Neither the trustee

nor any other party, including Wells Fargo, ever objected to Appellants' claimed exemptions in the accounts. On August 18, 2009, Appellants' counsel contacted Wells Fargo to request that the hold be lifted because Appellants claimed an exemption in a portion of the funds. Wells Fargo refused absent the trustee's agreement.

On August 27, 2009, Appellants filed a motion in the bankruptcy court seeking sanctions pursuant to 11 U.S.C. § 362(k) against Wells Fargo based upon Wells Fargo's alleged intentional violation of the automatic stay provisions in §§ 362(a)(3) and (a)(6). The bankruptcy court denied this motion, concluding that exempt property never becomes property of the bankruptcy estate, and Wells Fargo thus could not have violated the stay because the stay applies only to property of the estate. The bankruptcy court also concluded that Wells Fargo did not violate the stay because it took no action to collect, assess, or recover a prepetition claim it had against Appellants.

Appellants appealed to the BAP and the BAP reversed. In re Mwangi, 432 B.R. at 816. First, the BAP rejected Wells Fargo's argument that Wells Fargo's administrative hold policy is authorized by the Supreme Court's decision in Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995). 432 B.R. at 819. Second, the BAP concluded that property remains property of the estate even if the debtor claims an exemption and even if no one objects to the exemption. Id. at 821. However, the BAP concluded that a debtor who claims an exemption has "an inchoate interest in the property." Id. The BAP thus rejected the bankruptcy court's conclusion that Wells Fargo could not violate the automatic stay with respect to the exempt funds. Id.

Next, the BAP rejected Wells Fargo's argument that by placing a hold on the funds and requesting instructions from the trustee, Wells Fargo complied with its obligation to turn over property of the estate to the trustee. Id. at 821-22. The BAP also rejected Wells Fargo's argument that because the accounts belonged to the trustee, Appellants could not compel Wells Fargo to turn over the funds to Appellants. Id. at 822. On this point, the

BAP stated that:

> the failure to return property of the estate with knowledge of the bankruptcy is a violation of both the automatic stay and of the turnover requirements of the Bankruptcy Code. For that reason, we believe it is irrelevant whether Wells Fargo's national policy of holding the account funds until requested by the trustee to release them might have been in technical compliance with § 542(b), an issue which we do not decide.

Id. at 822 (internal citation and quotation marks omitted). The BAP reasoned that because any individual harmed by a willful violation of the automatic stay may recover actual damages, and because Appellants had an inchoate interest in property of the estate, Appellants "had standing to pursue sanctions for a stay violation." Id. at 822-23.

Next, the BAP concluded that Wells Fargo exercised control over estate property because it "chose to hold the funds until a demand was made for payment that it alone deemed appropriate." Id. at 823-24. According to the BAP, Appellants did not need to "seek a determination from the bankruptcy court that they were eligible for the protection of the automatic stay, that the trustee had abandoned the account funds to them, or that their claim of exemption in a portion of the account funds was valid." Id. at 824. The BAP concluded that Wells Fargo's policy improperly and in contravention of controlling legal authority placed the burden on Appellants to obtain the return of property of the estate in which they claimed an exemption. The BAP stated the following:

> "[I]f persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced." . . .
>     The impact of Wells Fargo's national policy is to turn on its head the balance between rights of parties legislatively created. As a result of the policy, every party, except Wells Fargo, whose rights are impacted by the administrative freeze will need to take action.

Id. at 824 (quoting In re Del Mission Ltd., 98 F.3d 1147, 1151 (9th Cir. 1996)). Finally, the BAP remanded to the bankruptcy court for a determination of whether Wells Fargo

4

willfully violated the stay, and if so, what, if any, damages to award Appellants.[1]  Id. at 824-25.

Upon remand, Appellants filed an adversary class action against Wells Fargo. (ER 1.)  The bankruptcy court granted Wells Fargo's motion to dismiss, with leave to amend.  (ER 7-24, 45-48.)  Appellants filed an amended adversary class action complaint alleging Wells Fargo violated the automatic stay in 11 U.S.C. § 362(a)(3), which Wells Fargo again moved to dismiss.  (ER 49-59, 102-121.)  This time, the bankruptcy court dismissed the adversary action with prejudice.  (ER 196-206, 207-14.)

The bankruptcy court concluded that Appellants had no standing to pursue any alleged stay violation with respect to the account funds because only the trustee has standing to protect estate property.  (ER 197.)  The bankruptcy court further concluded that Appellants could not allege an injury to any inchoate rights they had in the account funds because Appellants had no basis to demand possession of the account funds from Wells Fargo absent the trustee's agreement or approval unless and until the funds revested in Appellants.  (ER 198-99.)  Because Appellants did not seek a court order confirming the funds revested nor moved to compel the trustee to abandon the funds in the accounts, the funds remained property of the estate to which Appellants had no right to possess superior to that of the trustee.  (ER 212.)  In short, because Appellants had no right to possess the account funds, Appellants could not allege an injury caused by Wells Fargo's refusal to release the funds to Appellants.  (ER 212-14.)  The bankruptcy court therefore dismissed the adversary complaint with prejudice.  (ER 214.)

Appellants now appeal.  Appellants contend the bankruptcy court erred because it failed to acknowledge that Wells Fargo's conduct violated both the turnover provision,

---

[1] While the present appeal was pending, the bankruptcy court denied Appellants' motion for sanctions.  (Request for Judicial Notice (Doc. #15).)  Appellants have appealed that decision. (Response to Request for Judicial Notice (Doc. #16).)

5

which the trustee may enforce, and the automatic stay, which Appellants may enforce. Appellants contend that while the trustee has greater rights than Appellants to compel Wells Fargo to turn over the funds, Appellants have greater than, or at least equal rights as, the trustee to pursue Wells Fargo for violating the automatic stay. Appellants also contend the bankruptcy court's decision is contrary to controlling legal authority which places the burden on third party possessors to turn over property to the estate, not on the trustee or the debtor to pursue those assets. Alternatively, Appellants argue that even if the trustee's rights are superior, Appellants have standing to assert the trustee's rights. Moreover, Appellants assert that even if the bankruptcy court's decision is correct at the outset of the bankruptcy, once thirty days passed from the first meeting of creditors and no objections to the exemptions were filed, the funds revested in Appellants and they, not the trustee, therefore had the right to possess the funds. Finally, Appellants contend that even if they cannot pursue a claim under § 362(k), they may pursue damages under 11 U.S.C. § 105(a).

Wells Fargo responds that because Appellants had no right to possess the funds, they suffered no injury from Wells Fargo's hold on the funds. Wells Fargo argues that where a debtor claims an exemption in a particular dollar amount, the actual asset remains property of the estate and the debtor has only a guarantee of payment in the dollar amount of the claimed exemption. Wells Fargo contends this is particularly the case where the exemption relates to a deposit account at a bank because a bank account is not a tangible asset, it is the bank's promise to pay the party authorized to receive the benefit of the promise. According to Wells Fargo, because Appellants did not take any action to get either the trustee or the bankruptcy court to order the funds be distributed to Appellants, the trustee retained control of the estate property and Appellants had no right to possess the funds. Wells Fargo contends that if it had complied with Appellants' demands, it would have violated its obligation to turn over all estate property to the trustee. Wells Fargo further contends that while a party sometimes may pursue another party's rights, in the

bankruptcy context, the debtor does not have standing to bring claims belonging to the trustee.  Alternatively, Wells Fargo argues it complied with the turnover provisions and thus did not violate the automatic stay as a matter of law.

**II. STANDARD OF REVIEW**

The Court reviews de novo the Bankruptcy Court's conclusions of law, "including its interpretation of the Bankruptcy Code." In re Rains, 428 F.3d 893, 900 (9th Cir. 2005).  The Court reviews de novo whether a complaint fails to state a claim. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1030 (9th Cir. 2008). Whether property is property of the estate is a question of law the Court reviews de novo. White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008). The Court also reviews de novo whether the automatic stay has been violated.  In re Del Mission Ltd., 98 F.3d at 1150.  The Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record." In re Warren, 568 F.3d 1113, 1116 (9th Cir. 2009).

This Court is not bound by the BAP's decision. In re Silverman, 616 F.3d 1001, 1005 (9th Cir. 2010).  However, the BAP's decision constitutes "persuasive authority given its special expertise in bankruptcy issues and to promote uniformity of bankruptcy law throughout the Ninth Circuit." Id. at 1005 n.1.

**III.  DISCUSSION**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).  However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).  There is a strong presumption against dismissing an action for failure to state a claim.  Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).  A plaintiff must make sufficient factual allegations to establish a

plausible entitlement to relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Id. at 555.

The filing of a bankruptcy petition creates an estate, and the bankruptcy trustee is required to marshal all of the estate's property for the estate's benefit.  11 U.S.C. §§ 541(a), 704.  Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  Id. § 541(a)(1).  The trustee becomes the representative of the estate, and the debtor has an obligation to surrender all property to the trustee.  Id. §§ 323, 521(a)(4).

Upon filing for bankruptcy, the debtor immediately obtains the protection of an automatic stay pursuant to § 362(a).  Section 362(a)'s automatic stay is aimed at preserving the status quo "by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate."  In re Chugach Forest Products, Inc., 23 F.3d 241, 243 (9th Cir. 1994) (quotation omitted).  "The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others."  Id. (quotation omitted).  For example, § 362(a)(3) imposes an automatic stay on "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  Pursuant to § 362(k), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

In addition to the breathing space provided by the automatic stay provision, the trustee's effort at gathering property of the estate is aided by the turnover provisions in § 542.  Specifically as relevant to this case, § 542(b) provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on

order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."

Although the debtor is required to turn over all property to the trustee, the debtor may claim some estate property as exempt from distribution to creditors. 11 U.S.C. § 522. To do so, the debtor must file a list of property that the debtor claims is exempt. Id. § 522(l). Creditors and the trustee must object to any claimed exemption within thirty days of the first meeting of creditors. Otherwise, the property claimed to be exempt "is exempt," even if the debtor had no colorable basis for claiming the exemption or the claimed exemption exceeds what the relevant provision permits. Fed. R. Bankr. P. 4003; see also 11 U.S.C. § 522(l); Schwab v. Reilly, 130 S. Ct. 2652, 2658 (2010); Taylor v. Freeland & Kronz, 503 U.S. 638, 643-44 (1992).

The estate does not relinquish property until it is administered in the bankruptcy proceeding, the bankruptcy case is closed, or the estate abandons the property under 11 U.S.C. § 554. In re Gebhart, 621 F.3d 1206, 1212 (9th Cir. 2010); In re McLain, 516 F.3d 301, 315 (5th Cir. 2008) ("[P]roperty that is entitled to be exempted is initially regarded as estate property until it is claimed and distributed as exempt." (quotation omitted)). However, the statute does not unambiguously set forth when exempt property passes out of the estate and becomes the debtor's separate property. There are several possibilities, including upon the filing of the claim for exemption, upon the passage of thirty days after the first meeting of creditors if no objection is filed, upon resolution of any objection if one is filed, upon the trustee's abandonment of property under § 554, upon court order that the claimed property is the debtor's property, upon discharge, or upon the closing of the bankruptcy case.

The Court rejects the proposition that a debtor's mere claim of an exemption removes that property from the estate. Under § 522(l), the debtor files a list of property the debtor "claims as exempt," and "[u]nless a party in interest objects, the property claimed as

exempt on such list is exempt." Consequently, the debtor only "claims" an exemption and other interested parties are given an opportunity to object. This is reflected in Federal Rule of Bankruptcy Procedure 4003(b)(1), which provides that an interested party must file an objection within thirty days after the first meeting of creditors, or thirty days after the debtor files an amended list of claimed exemptions, whichever is later. If an interested party objects, the bankruptcy court "shall determine the issues presented by the objections." Fed. R. Bankr. P. 4003(c). However, if no one objects, under § 522(l) the property "is exempt." Based on this statutory language and Rule 4003, the Court concludes that if no one timely objects to a debtor's claimed exemption, then the property is exempt from property of the estate and passes to the debtor upon expiration of the time to object.

This construction prevents confusion and potential unwarranted liability on the part of third party possessors of estate property. A third party possessor of estate property would face the untenable position of deciding whether (1) to comply with the turnover obligations in § 542 and face potential liability to the debtor claiming an exemption if it turns out the property is exempt, or (2) accede to the debtor's demands to control the property and face liability to the trustee for violating its turnover obligation if any objection to the claimed exemption is upheld. Once the debtor's right to the exemption is established, this tension between potential competing claims to ownership no longer exists.

However, where the statute permitting the debtor to claim a particular exemption does not allow the debtor to exempt the entire property interest, but instead permits exemption of an interest in the property up to a particular dollar amount, "what is removed from the estate is an 'interest' in the property equal to the value of the exemption claimed at filing." In re Gebhart, 621 F.3d at 1210. In such cases, the underlying asset remains property of the estate, and the estate does not relinquish the property until it is administered in the bankruptcy, the trustee abandons the property, or the bankruptcy case is closed. Id. at 1210, 1212; Schwab, 130 S. Ct. at 2667 ("Where a debtor intends to exempt nothing more

than an interest worth a specified dollar amount in an asset that is not subject to an unlimited or in-kind exemption under the Code . . . [and] an interested party does not object to the claimed interest by the time the Rule 4003 period expires, title to the asset will remain with the estate pursuant to § 541, and the debtor will be guaranteed a payment in the dollar amount of the exemption.").

Here, even assuming Appellants had an inchoate right to the account funds as the BAP held, Appellants cannot allege a plausible injury from Wells Fargo's hold on the funds between the date Appellants filed the amended Schedule C and thirty days following the first meeting of creditors. Appellants had no right to possess the funds, as the funds were property of the estate during this period and thus subject to the trustee's sole control. Because Appellants had no right to possess the funds, Appellants could not be injured by Wells Fargo's refusal to turn the funds over to Appellants. Moreover, Appellants have no standing to pursue the trustee's turnover rights under § 542 during this, or any other, period of time because the "bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate." Estate of Spirtos v. One San Bernardino Cnty. Superior Ct. Case Numbered SPR 02211, 443 F.3d 1172, 1176 (9th Cir. 2006); see also In re Eisen, 31 F.3d 1447, 1451 n.2 (9th Cir. 1994).

Appellants also cannot state a plausible entitlement to relief under 11 U.S.C. § 362(k) for a violation of § 362(a)(3) after thirty days following the first meeting of creditors because at that point, the property Appellants claimed as exempt passed out of the estate and became Appellants' separate property. Section 362(k) provides a cause of action for an individual injured by a willful violation of the automatic stay, and the automatic stay in § 362(a)(3) applies only to property of the estate. Because the exempt property revested in Appellants, it no longer was property of the estate subject to the automatic stay. See 11 U.S.C. § 362(c); In re Kretzer, 48 B.R. 585, 587-88 (Bankr. D. Nev. 1985) (holding repossession of a truck did not violate the automatic stay because the truck was no longer

estate property where debtors claimed it as exempt, no party in interest objected, and truck therefore revested in the debtors).

Although Wells Fargo contends the bank accounts remained in the estate and Appellants had a claim only to an interest in the accounts, the Court disagrees. Schwab and Gebhart analyzed exemptions which, by their plain terms, allowed the debtor to claim only an "interest" in property. Schwab, 130 S. Ct. at 2657, 2662-63 (debtor claimed an exemption under § 522(d)(6) for an "aggregate interest, not to exceed" a certain dollar amount in value of business equipment); Gebhart, 621 F.3d at 1208, 1210 (one debtor claimed the exemption pursuant to an Arizona statute allowing a homestead exemption for "[t]he person's interest in real property" not to exceed $100,000 and the other claimed a similar exemption under § 522(d)(1) for "[t]he debtor's aggregate interest, not to exceed [$36,900] in value, in real property").

In contrast, Appellants here claimed an exemption under Nevada Revised Statutes § 21.090,[2] which provides:

> The following property is exempt from execution, except as otherwise specifically provided in this section or required by federal law:
> . . .
> (g) For any workweek, 75 percent of the disposable earnings of a judgment debtor during that week, or 50 times the minimum hourly wage prescribed by section 6(a)(1) of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 206(a)(1), and in effect at the time the earnings are payable, whichever is greater. . . . As used in this paragraph:
> (1) "Disposable earnings" means that part of the earnings of a judgment debtor remaining after the deduction from those earnings of any amounts required by law to be withheld.

---

[2] Section 522(b) "provides three alternatives for defining exempt property: (1) the federal 'laundry list' of exempt property that is contained in subsection (d); (2) the federal list as expressly modified by State law; or (3) the list of exemptions as defined by the State without reference to the federal list." In re Breen, 123 B.R. 357, 359 (9th Cir. BAP 1991). Nevada has defined its own exemptions without reference to the federal exemptions. Nev. Rev. Stat. §§ 21.090(1), 21.090(3).

12

> (2) "Earnings" means compensation paid or payable for personal services performed by a judgment debtor in the regular course of business, including, without limitation, compensation designated as income, wages, tips, a salary, a commission or a bonus. The term includes compensation received by a judgment debtor that is in the possession of the judgment debtor, compensation held in accounts maintained in a bank or any other financial institution or, in the case of a receivable, compensation that is due the judgment debtor.

Nev. Rev. Stat. § 21.090(1)(g). The particular Nevada exemption at issue here does not define the exempt property as an "interest" in disposable earnings up to a certain dollar amount. Rather, the exemption provides that seventy-five percent of the disposable earnings are exempt. Appellants claimed those earnings as exempt and no one timely objected. At that point, seventy-five percent of the compensation maintained in the bank accounts passed out of the estate to Appellants. Appellants therefore cannot state a claim under § 362(k) for a violation of the automatic stay under § 362(a)(3) for Wells Fargo exercising control over something that no longer was estate property.

      Even if the Court is incorrect and <u>Schwab</u> and <u>Gebhart</u> control, Appellants cannot state a plausible injury. If Appellants had an interest in estate property, they had no right to possess or control the actual assets in the estate until their interest was administered and distributed to them in some fashion, either through the trustee's agreement, abandonment, order of the court, or the closing of the case. Appellants do not allege any of these things occurred which would have entitled them to an enforceable right to the funds such that Wells Fargo violated the automatic stay. Appellants had no immediate right to possess the funds or access the accounts absent the trustee's agreement and Appellants thus could not have been injured by Wells Fargo's hold on the funds, as discussed above.

///

Finally, even if the Court is incorrect about all of its above conclusions, the Court may affirm the bankruptcy court on any basis supported by the record. Even if Appellants could allege a plausible injury, Wells Fargo did not violate the automatic stay under § 362(a)(3) as a matter of law. A bank does not exercise control over property of the estate within the meaning of § 362(a)(3) when it refuses or fails to perform on its contractual obligation to pay the owner of the account.[3] Strumpf, 516 U.S. at 21. The contention that a bank exercises control over estate property--

> might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, and [the bank's] temporary refusal to pay was neither a taking of possession of [the debtor's] property nor an exercising of control over it, but merely a refusal to perform its promise.

Id. (internal citations omitted).[4] Wells Fargo therefore did not violate § 363(a)(3) by refusing to perform on its promise.

For all of the reasons expressed above, Appellants also cannot state a plausible entitlement to relief under 11 U.S.C. § 105(a). Pursuant to § 105(a), the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Because Appellants cannot allege an injury, or, alternatively,

---

[3] The Court expresses no opinion on whether Wells Fargo violated its turnover obligations under § 542(b).

[4] See also Bank of Marin v. England, 385 U.S. 99, 101 (1966) ("The relationship of bank and depositor is that of debtor and creditor, founded upon contract."); In re Bakersfield Westar Ambulance, Inc., 123 F.3d 1243, 1246 (9th Cir. 1997) ("By depositing money into a bank account, the depositor enters a debtor-creditor relationship with the bank. Title to the funds passes to the bank, and the depositor receives a contract claim against the bank for an amount equal to the account balance." (internal citation omitted)); In re Bernard, 96 F.3d 1279, 1282 (9th Cir. 1996) ("As between the bank and the depositor such money becomes the property of the bank and the bank becomes the debtor of the depositor for the amount deposited." (quotation omitted)); In re Randolph Towers Coop., Inc., 458 B.R. 1, 3 (Bankr. D. Col. 2011) ("If a party to a contract with a debtor refuses to perform the contract because the debtor is in bankruptcy, that may be a breach of contract but it is not an exercise of control over property of the estate.").

because Wells Fargo did not violate any provision of the bankruptcy code for which Appellants have standing to sue, Appellants also cannot state a claim under § 105(a).

**IV.  CONCLUSION**

Appellants either cannot allege an injury or cannot allege Wells Fargo violated the automatic stay in 11 U.S.C. § 362(a)(3). The decision of the bankruptcy court dismissing their adversary action with prejudice is therefore AFFIRMED.

DATED:  April 6, 2012

_____
PHILIP M. PRO
United States District Judge